IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:06CR321 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| RALPH CORDY, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Ralph Cordy (Cordy) (Filing No. 12). Cordy was charged in the Indictment with possessing computer files on April 5, 2006, which included movie and image files of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Cordy seeks to suppress evidence obtained pursuant to a Nebraska state search warrant executed at his residence on April 5, 2006, and to suppress any statements made to law enforcement officers by Cordy on April 5, 2006.

The court held a hearing on the motion on December 11, 2006. Following a discussion of the burden for conducting an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) and an indication there was a miscommunication between the prosecution and the defense regarding the extent of discovery material contained on a compact disk, Cordy was provided an extension of time for an opportunity to expand his preliminary showing of an intentional or reckless falsehood in the affidavit for the search warrant in issue. The hearing was continued to December 20, 2006.

The hearing reconvened on December 20, 2006. Cordy was present for the hearing along with his retained counsel, Steven J. Lefler. The United States was represented by Assistant U.S. Attorney Michael P. Norris. During the hearing, Cordy presented an affidavit (Exhibit 101) in an attempt to meet his *Franks* burden. The court denied Cordy's request for a *Franks* hearing and proceeded with the hearing on the motion to suppress. The court received into evidence a copy of the search warrant (Exhibit 1) and Cordy's affidavit (Exhibit 101). The court also heard the testimony of Special Agent Brent Morral (Agent Morral) with the Bureau of Immigration and Customs Enforcement (ICE) of the Department

of Homeland Security. A transcript (TR.) of the December 11 and 20, 2006 hearings was filed on December 29, 2006 (Filing No. 21).

## FINDINGS OF FACT

The ICE Cyber Crimes Center commenced an investigation regarding internet access to child pornography (Exhibit 1). The investigation revealed that on September 12, 2004, an individual whose e-mail address is orr425@yahoo.com with a reported address of 3908 T Street, Omaha, Nebraska 68107, used credit card number 4417129130075040, used a computer to subscribe to a website, myillegalwebsite.net, which offered child pornography (Exhibit 1). An ICE computer forensic analyst determined that the individual using the credit card number and subscribing to the child pornography website was Ralph Cordy who resided at and was receiving mail at 3908 T Street in Omaha and had an e-mail address of orr425@yahoo.com and a telephone number of 402-734-5777 (Exhibit 1).

Agent Morral received information from the ICE Cyber Crimes Center that there were attempted subscriptions to websites containing child pornography during Operation Falcon and Operation Watch Dog conducted by the ICE Cyber Crimes Center (TR. 30). Since the information from the ICE Cyber Crimes Center was stale, Agent Morral decided to attempt to freshen the information by a "knock and talk" at Cordy's residence (TR. 30). On April 5, 2006, Agent Morral accompanied by Postal Inspector Jay Bruner (Inspector Bruner) and Douglas County Deputy Sheriff Matt Churchill (Deputy Churchill) drove to Cordy's residence at 3908 T Street in Omaha (TR. 29). The officers, all dressed casually, arrived at approximately six p.m. while it was still daylight (TR. 29). All three officers walked to the front door and knocked (TR. 30). Cordy answered the knock at the front door by coming to a side door (TR. 31). Agent Morral identified himself as an agent of the Department of Homeland Security and by displaying his credentials as did the other officers (TR. 31). Agent Morral told Cordy the officers were there to investigate possible credit card violations and asked if the officers could talk with Cordy (TR.31). Cordy stated that he would but it would have to be outside (TR. 31). Cordy stepped outside and all moved to a spot on the front lawn of Cordy's residence (TR. 31).

Agent Morral asked Cordy if he had any suspicious credit card charges (TR. 32). Cordy stated he had a suspicious charge from Israel on his Sears MasterCard (TR. 32). Cordy further stated his credit card bills were very large and he used his credit cards for purchasing things on the Internet (TR. 33). Agent Morral steered Cordy to answer questions about Cordy's e-mail, and Cordy verified he used orr425@yahoo.com as one of his e-mail addresses (TR. 33). Cordy asked Agent Morral if the conversation was leading to child pornography, and Agent Morral stated that it was (TR. 33). Agent Morral then asked Cordy if Cordy had seen any objectionable images on the Internet, and Cordy responded he had observed some images of children pop up on his Internet once in a while (TR. 34). Cordy stated he would search for child pornography on the Internet to report to a website he could not recall (TR. 34). Cordy stated he viewed child pornography within the past couple of months but he would delete the images immediately (TR. 34). Cordy stated he had received an e-mail with the words "Russian Lolita" in it, but deleted the e-mail. Investigator Bruner also asked Cordy questions concerning Cordy's viewing of child pornography on the Internet (TR. 35). The officers' conversation with Cordy lasted approximately fifteen minutes (TR. 35). During the conversation, the officers' voices were not raised, the conversation was casual, and no firearms were displayed (TR. 36). Cordy appeared nervous throughout the conversation (TR. 37).

At the conclusion of the conversation, Agent Morral believed he had probable cause to apply for a search warrant based on Cordy's admission that he viewed child pornography within the past couple of months (TR. 38). Agent Morral asked Cordy if it would be okay for the officers to come in and look at Cordy's computer and hard drives (TR. 38). Cordy stated he was not comfortable with that (TR. 38). Agent Morral told Cordy if would be easier if the officers could look at the computer otherwise the officers were going to apply for a search warrant (TR. 39). Cordy stated he was not comfortable with that and walked into the house and attempted to close the door on Agent Morral (TR. 39). Agent Morral put his foot in the door to prevent it from being closed and told Cordy the officers were going to enter the residence in order to secure it while awaiting a search warrant (TR. 39). The officers entered the residence through the front door and secured the residence pending obtaining the search warrant (TR. 39). Agent Morral stated Cordy indicated he would give

3

consent but was told the officers were obtaining a search warrant (TR. 39). Two officers were left at the residence to keep an eye on the computers, and Agent Morral and Deputy Churchill sought out a state court judge to issue a search warrant (TR. 40).

Agent Morral and Deputy Churchill located Douglas County Judge Darrell Lowe and presented him with an affidavit setting forth the following:

> That the following are the grounds for issuance of a search warrant for said property and the reasons for his belief, to wit:
>
> Your Affiant, Dep. M. A. CHURCHILL S351, is a sworn Deputy Sheriff with the Douglas County Sheriff's Office. Your Affiant is currently assigned to the Criminal Investigations Division as well as the Cyber Crimes Task Force.
>
> The following information was relayed to Your Affiant by Special Agent Brent MORRAL with Immigration and Custom Enforcement (ICE):
>
> Upon receipt of a lead from the ICE Cyber Crimes Center, the undersigned affiant commenced an investigation which revealed that on September 12, 2004 an individual whose e-mail address is orr425@yahoo.com with a reported address of 3908 T Street, Omaha, Nebraska 68107, who used credit card number 4417129130075040 subsequently identified as Ralph Cordy did knowingly use a computer to subscribe to a website, myillegalwebsite.net offering child pornography for sale. Based on the investigation and my training and experience, there is probable cause to believe that Ralph Cordy is a recipient of child pornography and that evidence of his receipt and possession of child pornography will be found at residence, the SUBJECT PREMISES.
>
> More specifically, in the course of analyzing the files containing customer information found in the two payment websites at http://www.justmetal.com and http://www.myillegalwebsite.net, it was determined that Ralph Cordy, with an address of 3908 T Street, Omaha, Nebraska 68107, used a Visa credit curd, account number 4417129130075040 to purchase a subscription to a web site containing child pornography.
>
> Additionally, in the course of analyzing the customer transaction data from the three payment sites www.justmetal.com www.myillegalwebsite.net and http://www.teen.com, provided to me by ICE Computer

4

>Forensic Agent Skinner, I also determined the following information regarding the subject: SUBJECT listed an email address of orr425@yahoo.com and a phone number of 402-734-5777.
>
>Special Agent MORRAL verified with Postal Inspector Jay BRUNER that CORDY was receiving mail at 3908 T. St.
>
>On WED, 05 APR 06, Your Affiant, Special Agent MORRAL, and Postal Inspector BRUNER went to 3908 T. St. to speak with Ralph CORDY. CORDY told MORRAL that he had no suspicious charges on the credit cards to access the illegal websites. CORDY admitted that he had seen child pornography on the internet and he reported it to an unknown website. CORDY said that he had received email with child pornography from a website named "Russian Lolita". CORDY said he had viewed child pornography on his computer approximately two months ago. CORDY said he did delete the pornography. CORDY did verify that he used the email address used to access the known child pornography websites. He said that no one else would have access to this account or to the credit used to purchase the child pornography.
>
>Your Affiant and MORRAL asked CORDY for consent to look at his computers for any evidence of child pornography. CORDY denied consent and told Your Affiant that he did not feel comfortable letting officers into his house.
>
>Your Affiant, MORRAL, and BRUNER secured CORDY's residence to apply for this search warrant.

Judge Lowe authorized the issuance of a search warrant which was then executed at 3908 T Street in Omaha where numerous items were seized, including various computer equipment and related items (Exhibit 1).

## CONCLUSION OF LAW

### Cordy's Request for a *Franks* Hearing

In ***Franks v. Delaware***, the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant or wire interception order. The Court held that, if the government intentionally includes material false statements in the application or affidavit or includes material false statements with a reckless disregard

5

for the truth that is the legal equivalent of intentional falsehood, a court reviewing a motion to suppress must "set aside those statements and then review the remaining portions of the affidavits to see if what remains [is] sufficient to establish probable cause." ***United States v. Garcia***, 785 F.2d 214, 222 (8th Cir.), **cert. denied**, 475 U.S. 1143 (1986). As stated by the Eighth Circuit in ***United States v. Falls***, 34 F.3d 674 (8th Cir. 1994):

> The defendant may challenge a facially sufficient affidavit by showing that the facts included in the affidavit are false or were made in reckless disregard of the truth, or that facts were omitted with the intent to mislead or in reckless disregard of whether it was misleading. The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the remaining contents of the affidavit are sufficient to establish probable cause. If the remaining contents are insufficient to establish probable cause, the warrant must be voided and the fruits of the search suppressed.

*Id.* at 681 (citations omitted).

To succeed in a ***Franks***-type challenge to the validity of a search warrant, a defendant bears the burden to establish by a preponderance of the evidence that the affiant, either knowingly and intentionally, or with reckless disregard of the truth, included a false statement within the warrant affidavit. ***Franks***, 438 U.S. at 155-56; ***United States v. Williams***, 981 F.2d 1003, 1005 (8th Cir. 1992). The same analysis applies to omissions of fact. The defendant must show that the facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading. ***United States v. Humphreys***, 982 F.2d 254, 258 n.2 (8th Cir. 1992), **cert. denied**, 114 S. Ct. 61 (1993); ***United States v. Reivich***, 793 F.2d 957, 960-61 (8th Cir. 1986); ***United States v. Lueth***, 807 F.2d 719, 726 (8th Cir. 1986). The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the affidavit's remaining contents are sufficient to establish probable cause. **See *Franks***, 438 U.S. at 156.

In order to be entitled to a ***Franks*** hearing, the Eighth Circuit has held that the defendant must satisfy two requirements:

> First, the defendant must make a substantial preliminary showing of an intentional or reckless falsehood in the affidavit. The substantiality requirement is not lightly met. Allegations of negligence or innocent mistake are insufficient. Second, the allegedly false statements must be necessary to the finding of probable cause.

*United States v. Schenk*, 983 F.2d 876, 879 (8th Cir. 1993) (internal citations omitted). If these requirements are not met, no *Franks* hearing is required. *United States v. Stropes*, 387 F.3d 766, 771 (8th Cir. 2004); *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987).

With the above principles in mind, the court has reviewed Cordy's request for a *Franks* hearing. Cordy challenges statements in the search warrant affidavit in the following aspects:

1. Ralph Cordy does not have credit card number 4417129130075040;

2. County Court Judge Lowe was not provided an affidavit which contained the usual information in a typical 62-page affidavit of similar cases; and

3. The information provided by the officers regarding statements of Cordy were inaccurate.

Cordy presented his own affidavit (Exhibit 101) prior to the hearing to support his challenges in 1 and 3 above. Cordy attempted to present a 66-page affidavit and application for a search warrant in an unrelated case (Exhibit 102) which was not received in evidence after the court sustained the government's objection (TR. 48).

Even if one assumes, *arguendo*, that Cordy's assertion regarding the credit card number was accurate, there is no evidence presented by Cordy to show Deputy Churchill knew about the inaccuracy of the credit card number or that Deputy Churchill intentionally or recklessly omitted the information from his affidavit for the search warrant. Furthermore, the exact credit card number was not the principle issue. Rather, the issue was the use of the computer to access child pornography. Even if the credit card number was inaccurate, the probable cause to believe Cordy's computer may contain images of child pornography rested in Cordy's e-mail address and his admission that he had recently viewed child pornography. The fact that other applications for search warrants may have been more

lengthy and detailed does not establish that County Judge Lowe was misled by Deputy Churchill or Agent Morral.

Accordingly, Cordy's attempt to introduce evidence through the mechanism of a *Franks* hearing is without merit. Cordy's motion for a *Franks* hearing will be denied.

### Sufficiency of the Affidavit

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, *Search and Seizure*, § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983): "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). "The duty of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . . Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). **See** *Gates*, 462 U.S. at 238. The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.* When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir.

> 1982), **cert. denied**, 459 U.S. 1201, 103 S. Ct. 1184, 75 L. Ed. 2d 431 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988), **citing** *United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965). "Deference is accorded an issuing magistrate's probable cause determination . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), **cert. denied**, 440 U.S. 910, 99 S. Ct. 1220, 59 L. Ed. 2d 458 (1979).

*United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added). **See also** *United States v. Spinosa*, 982 F.2d 620 (1st Cir. 1992) ("The affidavit must be 'viewed in its entirety,' and 'must be given a common-sense and realistic, rather than a hyper technical interpretation.'").

"Probable cause must exist at the time of the issuance of the warrant, not merely at some earlier time." *LaMorie*, 100 F.3d at 554. However, since there is no bright-line test for determining whether the information in an affidavit is stale, the statements in an affidavit must be judged by the particular circumstances of the case. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). Where continuing criminal activity is suspected as was in this case, the passage of time is less important. *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir.), **cert. denied**, 116 S. Ct. 193 (1995). The court finds the information was not stale and there was sufficient probable cause for County Court Judge Lowe to issue the search warrant.

### *Leon* Good Faith Exception

Even assuming *arguendo*, that probable cause was lacking in sufficiency or freshness, the ***Leon*** good faith exception would allow the admissibility of the evidence seized. **See** *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the

9

magistrate's determination of probable cause.'" **LaMorie**, 100 F.3d at 555.  There are four exceptions to this good faith rule:

> (1)  where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2)  where the issuing officer "wholly abandoned his judicial role;" (3)  where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

**Id.** (internal citations omitted).

None of those exceptions were present in this case.  Accordingly, the officers could rely upon the search warrant and Cordy's motion to suppress the results of the search warrant should be denied.

### Cordy's Pre-Search Warrant Statements

The touchstone for the admissibility of a defendant's statements is voluntariness. **Brown v. Mississippi**, 297 U.S. 278 (1936).  The court must look to the totality of circumstances in determining whether or not the statements were voluntary.  **Mincey v. Arizona**, 437 U.S. 385 (1978); **Colorado v. Connelly**, 479 U.S. 157 (1986); **Schneckloth v. Bustamonte**, 412 U.S. 218 (1973).

One of the principal factors is whether or not the defendant was in custody at the time of the statements.  "A consensual encounter does not amount to a custodial situation requiring the administration of **Miranda** warnings." **United States v. Woods**, 213 F.3d 1021, 1023 (8th Cir. 2000).  A **Miranda** warning must precede any custodial interrogation. A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." **United States v. Chamberlain**, 163 F.3d 499, 502 (8th Cir. 1999) (**citing Miranda v. Arizona**, 384 U.S. 436 (1966)).  "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom in any significant way." **United States v. Griffin**, 922 F.2d 1343, 1347 (8th Cir. 1990).  "In

determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." ***Thatsaphone v. Weber***, 137 F.3d 1041, 1044 (8th Cir. 1998) (**citing *Stansbury v. California***, 511 U.S. 318, 322 (1994)).  The definition of questioning includes, "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the [defendant]."  ***United States v. Koontz***, 143 F.3d 408, 411 (8th Cir. 1998) (**citing *Rhode Island v. Innis***, 446 U.S. 291, 300-01 (1980)).  Failure to advise an in-custodial defendant of such rights will render statements inadmissible made by such a defendant as a result of police interrogation.

In determining whether a defendant made statements voluntarily, the court must also determine if the accused was coerced or his will was overborne.  ***United States v. Wilson***, 787 F.2d 375, 380-81 (8th Cir.), **cert. denied**, 479 U.S. 857 (1986).  The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. ***Schneckloth***, 412 U.S. at 225-26.  Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. ***Connelly***, 479 U.S. at 167.  However, any police questioning has coercive aspects to it simply by reason of the confrontation.  The police officer is part of the law enforcement system that will cause a charge to be made against a suspect.  The questioning by a police officer, while uncomfortable, is not coercive *per se*.  **See *Oregon v. Mathiason***, 429 U.S. 492, 495 (1977).

In this case, the encounter between Cordy and the officers was consensual.  Cordy answered the knock at the door and voluntarily came outside to talk with the officers on Cordy's front lawn.  While Cordy was nervous at times during the conversation, the colloquy was undertaken in a normal conversation tone.  Near the end of the conversation after Agent Morral asked for Cordy's consent to inspect Cordy's computer, Cordy retreated to his residence and attempted to shut the door on Agent Morral.  Whereupon, Agent Morral prevented the door from being closed by inserting his foot in the doorway.  While the issue

of custody and voluntariness may be blurred following this action by Agent Morral, the government does not seek to introduce any subsequent statements by Morral and Cordy does not seek the suppression of such statements in this motion (TR. 40).

The court finds Cordy's pre-search statements were voluntarily made. Cordy's motion to suppress such statements should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Cordy's motion to suppress (Filing No. 12) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 8th day of February, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge